**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION**

| | |
|---|---|
| Patricia Hooper and<br>Josephine Vaughan,<br><br>    Plaintiffs,<br>v.<br><br>Advance America, et al<br><br>    Defendant. | Case No. 08-04045-CV-C-NKL |

## Plaintiffs' Suggestions in Opposition to Defendant's *Motion to Dismiss*

## Table of Contents

Introduction ............................................................................................................................. 3

Plaintiffs have complied with the requirements of FRCP 8(a)(2). ............................................ 6

Count III properly alleges a cause of action. ........................................................................... 7

Count IV properly alleges a cause of action. ........................................................................... 9

Count V properly alleges a cause of action. ............................................................................ 9

Count VI properly alleges a cause of action. ......................................................................... 10

Count VII properly alleges a cause of action. ........................................................................ 10

Chapter 407 RSMo applies to the facts of this case. ............................................................. 11

Defendant's Motion to Dismiss Count I for Lack of Subject Matter Jurisdiction should be denied.
................................................................................................................................................ 12

Conclusions ............................................................................................................................ 14

1

# Table of Authorities

**Cases**

*Bell Atl. Corp. v. Twombly,* 127 S.Ct. 1955, (2007). .............................................................. 5, 6, 7

*Bonner v. Circuit Court of the City of Saint Louis,* the 8th Circuit Court of Appeals 526 F.2d
    1331, 1334 (8th Cir. 1975),................................................................................................. 13

*Schaaf v. Residential Funding Corp.,* 517 F.3d 544, 549 (C.A.8 (Minn.) 2008). ......................... 6

*Stalley v. Catholic Health Initiatives,* 509 F.3d 517, 521 (C.A.8 (Ark.) 2007). ............................ 5

*Thomas W. Garland, Inc. v. City of St. Louis,* 596 F.2d 784, 787 (8th Cir. 1979) ....................... 13

**Statutes**

§408.500........................................................................................................................................ 11

§408.505.5...................................................................................................................................... 3

§408.562........................................................................................................................................ 11

**§527.010 RSMo**........................................................................................................................... 12

**28 USC § 2201**............................................................................................................................ 12

Chapter 407 RSMo ....................................................................................................................... 10

Chapter 408 RSMo ....................................................................................................................... 10

FRCP 12(b)(6) ................................................................................................................................ 5

FRCP 8(a)(2).................................................................................................................................... 6

# Introduction

Payday loans are highly volatile loans bearing interest rates that can exceed 500%. In 2003, the Missouri Legislature amended Missouri's payday lending laws to make certain that payday loans remained short-term conveniences rather than long-term debt traps.

The Legislature required the lender to allow the borrower the option to pay off payday loans in up to six separate payments (called "renewals") See §408.500.6 R.S.Mo (all cites are to Missouri Revised Statutes). In order to accept any such partial payment, the lender has the duty to make certain that the principal is simultaneously reduced by at least 5%. *Id.* These multiple payments, coupled with these 5% reductions, give borrowers a better chance to escape payday loans in progressive steps, thereby lowering the risk that these borrowers will end up in perpetual indebtedness.

Recognizing that the option to stretch out the payments is only useful if the borrower can *afford* those payments, the legislature required payday lenders to carefully consider the consumer's ability to repay a loan before handing out high-interest money. §408.500.7.

The legislature capped the amount of interest and fees a payday lender could recover on a payday loan at 75% of the original loan amount. §408.505.3. Since only up to six payments can be made on a payday loan and since the amount of interest that can be recovered is capped, this combination effectively caps the amount of interest any lender can charge on a loan. If a lender sets its interest rate too high, and if the length of the loan is too short, the interest collected is guaranteed to exceed 75%.

Finally, to avoid trickery, no payday loan may be paid with the proceeds of another payday loan. §408.505.5.

These statutes were carefully crafted to make payday loan indebtedness short in duration. This intent is summarized by the Division of Finance at 20 MO ADC 1140-11.030(8), which states: **"The General Assembly has clearly indicated its intention that no borrower is indebted to a company on any particular loan for any great period of time."** The same regulation requires payday lenders to exhibit "absolute good faith" in following the above laws.

Plaintiffs have alleged that Defendant specifically designed a system which violated every statute and regulation described above in an attempt to trap Plaintiffs in an unending debt cycle. (Pl.'s Comp. ¶¶ 14 -22.) (All cites are to Plaintiffs' *Complaint*.) Specifically, Plaintiffs have alleged the following:

When customers were loaned money, Defendant did not first obtain adequate financial information to determine whether or not the loan could be repaid in the "time and manner specified," as required by law. ( ¶¶ 4,10.) In addition to over-loaning, Defendant cut off the consumer's right to make six payments (called renewals in the statute) and instead limited consumers to *four* payments. (¶¶ 14; 86-88.) In cutting its loan payoffs short, Defendant increased the final amount owed by Plaintiffs and Class and reduced the likelihood the loan could be paid off (just as shortening a mortgage would result in an increased balloon payment at the end of the term). (¶¶ 14; 88.)

Defendant set its interest rate so high that if Plaintiffs and Class had exercised their statutory rights to make payments by renewing the loan and reducing the principal by as little as 5%, Plaintiff would be charged more than 75% in interest in fees. (¶¶ 15-17.) In this way, Defendant's interest rate violated Missouri's *de facto* interest rate cap because it was too high to allow legally-required renewals. (¶¶ 96-98.)

4

Instead of allowing up to six payments and requiring the legally-required principal reductions on a reasonable loan, Defendant encouraged the consumers to "pay off" their existing loans while simultaneously re-borrowing the full amount owed, resulting in an illegal (and perpetual) series of interest-only payments. (¶¶ 18-22.)

In reality, Defendant often didn't require any payment at all: the paperwork was falsified. (¶ 25.) The result was that only *interest* was paid and the loan principal was *never* reduced. (¶¶ 23,24.) Plaintiffs could only "pay off" their current loan because they would simultaneously receive the proceeds of another payday loan; this constituted paying one loan with the proceeds of another. (¶¶ 26-27.) In doing so, Defendant renewed the loans multiple times without reducing principal. (¶¶ 105 -108.) Defendant also recovered more than 75% in interest and fees in the process. (¶¶ 15; 121,122.)

Defendant's carefully designed business plan was to turn payday loans into long-term debts bearing extremely high interest, (See generally ¶¶ 14-39.). Defendant's practice was to make "new loans" only minutes after the "old loans" were "paid off," so that the loan principal would remain static, in an attempt to evade the overall purpose of Missouri's statutory payday lender scheme.

Defendant's conduct constituted an unrelenting stream of violations of the Missouri Division of Finance requirements that Defendant act in "absolute good faith," that payday loans remain "short term," and that Defendant follow Missouri payday loan laws "in substance rather than form." (¶¶ 29.)

## Plaintiffs have complied with the requirements of FRCP 8(a)(2).

When considering a FRCP 12(b)(6) Motion to Dismiss, the Court must accept as true all factual allegations in the complaint. *Stalley v. Catholic Health Initiatives,* 509 F.3d 517, 521 (C.A.8 (Ark.) 2007). To prevail, a defendant must show that plaintiffs failed to assert facts that *affirmatively and plausibly suggest* that plaintiffs have the right to make the claims they assert. *Bell Atl. Corp. v. Twombly,* 127 S.Ct. 1955, (2007).

Plaintiffs specifically described each violation listed in the Counts of their *Complaint*, giving Defendant notice of the nature of each violation by alleging *facts* supporting each of their claims. A simple reading of Plaintiffs' *Complaint* will demonstrate this. Further, Plaintiffs have affirmatively and plausibly suggested that they have the rights they claim.

Defendants nonetheless argue that Plaintiffs allegations are deficient pursuant to the U.S. Supreme Court case of *Bell Atl. Corp. v. Twombly,* 127 S.Ct. 1955, (2007). The *Twombly* Court was deciding an antitrust case pursuant to the Sherman Act, rather than a relatively simple set of payday statutes. The Supreme Court held that the plaintiffs failed to plead in such a way as to exclude the possibility of non-actionable independent action.

Contrary to the implications of the Defendant in this case, the *Twombly* Court did not require *fact pleading*s or require allegations that exceeded the requirements of FRCP 8(a)(2) ("a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests."). *Twombly* held that the Plaintiff needed to state "only enough facts to state a claim to relief that is plausible on its face." Id at 1970. Although the allegations need to be more than "labels and conclusions" or merely a "formulaic recitation of the elements of a cause of action," the complaint need not contain "detailed factual allegations." *Id* at 1965-66.

A review of cases from the 8th Circuit Court of Appeals reveals that the 8th Circuit has rejected the broad reading Defendant attributes to *Twombly*. The Complaint merely needs to "include sufficient factual information to provide the grounds on which the claim rests, and to raise a right to relief above a speculative level." *Schaaf v. Residential Funding Corp.,* 517 F.3d 544, 549 (C.A.8 (Minn.) 2008). This requires more than labels and conclusions." *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (C.A.8 (Iowa) 2008).

Defendant argues that Plaintiff's allegations (regarding each of Plaintiffs' Counts) fail because Plaintiffs "have not pled any particularized facts." There is no requirement for Plaintiffs to plead what amount to evidentiary facts, however. Nonetheless, the Plaintiffs have alleged ample facts regarding their business relationships with the Defendant. They've also attached some of their payday loan paperwork to the *Complaint*.

In <u>this</u> case, where the Missouri statutes specify the forbidden conduct, *the factual allegations will necessarily parallel the statute.* Where the Missouri payday statutes say, essentially, "Don't do X," the allegations of any proper Complaint will essentially consist of allegations that the Defendant did "X." Further, as this Court can see, Plaintiffs went well beyond this requirement, based on the allegations of their *Complaint*.

As demonstrated by the allegations of the *Complaint*, Plaintiffs have more than complied with both FRCP 8(a)(2) and *Twombly.*

## Count III properly alleges a cause of action.

In Count III, Plaintiffs have alleged that Defendant improperly limited the number of payments which Plaintiffs are entitled to make on their loans pursuant to §408.500.6, RSMo. This illegal limitation makes it much less likely that consumers will be able to successfully pay off their payday loans—because they cannot stretch out their payments the temptation grows to

7

try to repay their payday loan with another payday loan. Plaintiffs have alleged that Defendant cut off Plaintiffs' statutory right to pay off each payday loan with up to six payments. Regarding these claims, see the facts alleged in paragraphs 14, 15, 30, 74-75, 81-91.

Defendant argues that Count III fails because Defendant was not really required to give plaintiffs the option to make more than four payments ("renewals") of their payday loans pursuant to §408.500.6. RSMo This argument is factually incorrect, because the clear language of §408.500.6 provides that "The lender shall renew the loan upon the borrowers written request... however, no loan may be renewed more than six times."

Defendant wrongly construes Plaintiffs' claim to be that Defendant must provide six renewals of every loan "no more, no less."[1] Contrary to Defendant's arguments, Plaintiffs' claim is that customers should each be given the *option* of taking up to six payments to completely pay off their payday loans.

Defendant improperly injects factual issues throughout its argument on this Motion to Dismiss. Regarding Count III, Defendant argues that particular customers might not "qualify for renewal." On a motion to dismiss, such evidentiary possibilities are irrelevant. Defendant's injection of evidentiary facts to argue a Motion to Dismiss is an improper and premature attempt to conduct a mini-trial.

Defendants further argue that Plaintiffs haven't alleged that they sustained any damage as a result of this violation. This argument is patently untrue, as the Court can see by reference to paragraph 90 of the Complaint: "As a direct result of defendant Advance America's violations, Plaintiffs and the class are aggrieved and suffered ascertainable losses."

---

[1] Defendant's *Suggestions in Support,* page 5

8

Case 2:08-cv-04045-NKL   Document 13   Filed 05/15/08   Page 8 of 15

## Count IV properly alleges a cause of action.

In Count IV, Plaintiffs have alleged that §408.500.6 (which gives the plaintiffs a statutory right to pay off their payday loans with up to six payments "renewals") and §408.505.3 RSMo (which forbids collecting more than 75% of the original loan amount), when considered in tandem, set a mathematical cap for the interest rate that may be charged on payday loans. Defendant violated this *de facto* interest cap when it illegally limited the customers' options to pay off loans by making up to six payments. See the facts alleged in paragraphs 15, 30, 74-75 and 92-98.

Plaintiffs have alleged that when Defendant illegally prohibited Plaintiffs to have access to all six opportunities to pay off their loans (see Count III), Defendant systematically engaged in this illegal practice, which "caused ascertainable and direct damage to Plaintiffs."

Plaintiffs have pled ample facts to give defendant notice of this claim. Plaintiffs have gone beyond "generalization and speculation" in substantiating this cause of action.

## Count V properly alleges a cause of action.

In Count V of the complaint, plaintiffs allege (paragraphs 105 through 110) that defendant failed to reduce the debt by at least 5% when it renewed the loans of plaintiffs and class members. Plaintiffs have further alleged that defendant issued what amounted to fake new loans as part of this illegal method of doing business. See the facts alleged in paragraphs 6, 11, 12, 18-24, 74-75, 104-108.

Defendants have argued that Plaintiffs failed to plead "particularized facts." This argument fails for the same reasons discussed in the previous section. As a reading of the complaint will reveal, Plaintiffs have pled ample facts to establish their claim that Defendant broke the 5% rule and thereby caused them financial damage.

9

## Count VI properly alleges a cause of action.

In Count VI, the Plaintiffs have alleged that defendant failed to obtain the information necessary to allow the defendant to evaluate Plaintiffs' ability to repay the loans (see paragraph 115). In failing to collect this critically important information, Defendant violated §408.500.7 RSMo. See the facts alleged in paragraphs 4, 10, 30 and 74-75, 114-115.

Defendant claims, however, that these allegations constitute only a "legal conclusion." Defendant's argument is absurd in light of the numerous facts incorporated into Count VI. Defendant's argument is revealing. Defendant draws upon facts not in the record to argue that it purportedly had enough information to determine that the customers had the ability to repay their loans. See page 9 of Defendant's S*uggestions*, for example, where Defendant argues that Defendant made sure that the customers had checking accounts, thereby allegedly demonstrating that those customers had the ability to repay the loans Defendant handed out. Plaintiff strongly disagrees. That a customer has a checking account doesn't prove credit worthiness. Again, though, this is an issue of *fact*, not a dispute to be resolved on a motion to dismiss.

Defendant's argument also fails for the same reasons discussed in the previous sections. Plaintiffs have pled ample facts, as a reading of the Complaint will reveal.

## Count VII properly alleges a cause of action.

In Count VII, Plaintiffs allege that Defendant charged the Plaintiffs more than 75% in interest and fees in violation of Missouri statute §408.505.3. See the facts alleged in paragraphs 15, 30, 74-75, 92-98.

In response to this simple factual claim, Defendant demands evidence of the "total cost of the interest and fees that plaintiffs paid" (see page 10 of Defendant's *Suggestions*). As before,

10

Defendant's argument regarding Count VII fails for the same reasons discussed in the previous sections. Plaintiffs have adequately pled their cause of action, as a reading of the *Complaint* will reveal. There is no requirement that Plaintiffs also describe their *evidence* in their *Complaint.*

## Chapter 407 RSMo applies to the facts of this case.

Plaintiffs have brought their suit under two separate statutory schemes: Missouri's Payday Loan statutes (Chapter 408 RSMo) and the Missouri's Merchandising Practices Act (Chapter 407 RSMo).

Pursuant to Count II, Plaintiffs have alleged that Defendant has engaged in numerous unfair practices regarding its method of selling payday loans. Plaintiffs have further alleged that Defendant has violated virtually every Missouri payday loan law on the books, which also constitute violations of Chapter 407. Plaintiffs have alleged that Defendant's business method is to trap people in payday loans, which is the antithesis of Missouri public policy on this issue.

In its response, Defendant has argued that Plaintiffs cannot sue Defendant based on Chapter 407 because financial institutions are purportedly exempt from liability under the Merchandising Practices Act because Defendant is supervised by the Missouri Division of Finance.[2] In order to invoke this argument, however, Defendant injects numerous additional facts into the discussion, none of which are proper on a Motion to Dismiss. Further, Defendant incorrectly asserts that some of these *factual assumptions* are in the *Complaint* (e.g., Defendant assumes, as a pleaded *fact,* that the Division of Finance "supervises Advance America through licensing and regulatory enforcement"). For this reason alone, Defendant's argument fails.

Defendant's argument fails for a second reason, which becomes apparent when one reads Section §407.020.2(2), the exact statute on which Defendant relies for its purported "immunity."

---

[2] See Defendant's Suggestions, p. 5.

> **Nothing contained in this section shall apply to**: . . . any . . . **company** . . . **under the direction and supervision of the** . . . **director of the division of finance**, <u>unless . . . such powers are provided to . . . a private citizen by statute.</u>[3]

The Missouri Legislature <u>has</u> provided private Missouri Citizens the power to enforce Missouri's payday loan statutes (See **§**408.562 and §408.500). The Missouri Legislature has clearly stated that *this* sort of financial institution—payday lenders—should be *directly* answerable to Missouri consumers. For this reason, the Chapter 407 "exemption" on which Defendant relies does not apply to this case against a payday lender.

# Defendant's Motion to Dismiss Count I for Lack of Subject Matter Jurisdiction should be denied.

In Count I of their *Complaint*, Plaintiffs have asked this Court to enter a declaratory judgment, adjudicating and declaring that Defendant's mandatory arbitration clause is unconscionable.

In its Motion, Defendant seeks to dismiss Count I because plaintiffs ostensibly relied upon the "Missouri" declaratory judgment act rather than the corresponding federal act.[4]

---

[3] Here is the full section (emphasis added):
   2. **Nothing contained in this section shall apply to**: . . .
   (2) **Any** institution or **company** that is **under the direction and supervision of the** director of the department of insurance, director of the division of credit unions, or **director of the division of finance**, **unless** the directors of such divisions specifically authorize the attorney general to implement the powers of this chapter or **such powers are provided to** either the attorney general or **a private citizen by statute.**

[4] Here is the operative language of the state and federal declaratory judgment acts:

   **§527.010 RSMo (Missouri Declaratory Judgment Act):**
   The circuit courts of this state, within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a

12

Plaintiffs admit that this Court does not have jurisdiction to apply the Missouri act. Plaintiffs admit that their reference to "Missouri" was a vestige from a prior version of the Complaint that was filed in state court and that this reference to the Missouri act should have been modified.

Nonetheless, the fact that the Plaintiffs mistakenly referred to the <u>state</u> act rather than the corresponding <u>federal</u> act does not deny this court of subject matter jurisdiction. The allegations of Count I make it clear that the plaintiffs are seeking a declaratory judgment regarding the arbitration clause that Defendant forced each of its customers to sign when those customers took out payday loans. Other than the reference to the *state* act rather than the *federal* act, the allegations in Count I, clearly state a cause of action.

In *Bonner v. Circuit Court of the City of Saint Louis,* the 8th Circuit Court of Appeals 526 F.2d 1331, 1334 (8th Cir. 1975), held that

> a complaint should not be dismissed merely because a plaintiff's allegations do not support the particular legal theory he advances, for the court is under a duty to examine the complaint to determine if the allegations provide for relief on any possible theory.

In *Bonner,* the plaintiffs alleged jurisdiction under § 42 U.S.C. 2000(a), contending that the state court was a place of public accommodation. The District Court *dismissed*, holding that the state court was not a place of public accommodation under that statute. *Id.* at 1334. The 8th Circuit Court of Appeals reversed, holding that the Complaint successfully asserted jurisdiction under a federal act not mentioned in the Complaint, the Civil Rights Act, § 42 U.S.C. 1983.

---

declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect; and such declarations shall have the force and effect of a final judgment or decree.

**28 USC § 2201 (Federal Declaratory Judgment Act):**
In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

13

In *Thomas W. Garland, Inc. v. City of St. Louis,* 596 F.2d 784, 787 (8th Cir. 1979), the 8th Circuit expanded the *Bonner* rule, holding that:

> [A] complaint should not be dismissed merely because a plaintiff's allegations do not support the particular legal theory he advances, for the court is under a duty to examine the complaint to determine if the allegations provide for relief on any possible theory.

Therefore, the law requires this Court to consider whether the *allegations* of Count I state a cause of action pursuant the Federal Declaratory Judgment Act. Because these allegations do state a cause of action under the federal act, this Court does have Subject Matter Jurisdiction and Defendant's Motion to dismiss for lack of subject matter jurisdiction must be denied.

Insofar as Defendant relies on this same argument for it motion to dismiss Count I on jurisdictional grounds, that argument also fails.[5]

## Conclusions

Based on the foregoing, Plaintiffs have stated causes of action regarding each of the counts of the *Complaint.* Further, Plaintiffs have properly invoked federal subject matter jurisdiction regarding Count I.

*In the event that this Court disagrees with Plaintiffs, however,* and grants all or part of Defendant's Motion to Dismiss, Plaintiffs hereby ask this Court for leave to file an amended complaint to correct the reference to the Missouri Declaratory Judgment Act and to make any further corrections that might be required pursuant to the Order of this Court.

Defendant's "Conclusion" asserts that Defendant has preserved the right to enforce its arbitration provision, despite taking the affirmative step of asking this court to dismiss Plaintiffs' Complaint on substantive grounds. Plaintiffs strongly oppose this tactic, which amounts to

---

[5] See p. 4 of Defendant's *Suggestions in Support.*

giving Defendant two opportunities to argue the same issues, before this Court and then (if Defendant doesn't prevail in this Court) before an arbitrator. It is Plaintiffs' position that Defendant has waived any right to enforce its arbitration clause by filing its Motion to Dismiss.

**Simon • Passanante, PC**

By:    /s/ John Campbell
        Erich Vieth, #29850
        John Campbell #59318
        Attorneys for Plaintiffs
        701 Market St., Suite 1150
        St. Louis, Missouri 63101
        Telephone: (314) 241-2929
        Facsimile: (314) 241-2029
        jcampbell@simonpassanante.com

**Certificate of Service**

The undersigned hereby certifies that on May 15, 2008, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all appropriate parties in this matter.

By: \s\ John Campbell