IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| PATRICIA HOOPER and JOSEPHINE VAUGHAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>ADVANCE AMERICA, CASH ADVANCE CENTERS OF MISSOURI, INC. d/b/a/ Advance America, Cash Advance Centers, d/b/a Advance America,<br><br>Defendants. | Case No. 08-04045-CV-C-NKL |

**ORDER**

Plaintiffs Patricia Hooper and Josephine Vaughan (collectively, "Plaintiffs") bring this putative class action against Defendant Advance America, Cash Advance Centers of Missouri, Inc. ("Advance"), alleging violations of the Missouri Merchandising Practices Act and Missouri's payday loan statute. Before the Court are Advance's Motion to Dismiss [Docs. ## 10, 11, 13, 19] and Plaintiffs' Motion for Leave to File Amended Complaint [Docs. ## 14, 15, 20, 21]. For the following reasons, the Court grants in part and denies in part Advance's motion to dismiss. The Court also grants Plaintiffs' motion for leave to file an amended complaint.

1

## I. Factual Background

This case concerns the legality of payday loans that Advance gave Plaintiffs. The Court has diversity jurisdiction pursuant to Title 28, Section 1332(d)(2), of the United States Code. For purposes of this motion, the Court accepts as true the following facts alleged in Plaintiffs' Complaint.

Advance is in the business of making payday loans. In June 2007 in Columbia, Missouri, Advance gave Plaintiff Patricia Hooper the first of a series of loans in the amount of $500 at 277.4% interest. She remained indebted until approximately September 2007. In November 2006, in Jefferson City, Missouri, Advance gave Plaintiff Josephine Vaughan the first of a series of loans in the amount of $500 at 200.74% interest. She remained indebted until approximately December 2007. The Complaint alleges that, prior to making the loans, Advance did not consider Plaintiffs' abilities to repay them.

The Complaint states that Advance limited Plaintiffs to four renewals of their respective loans, rather than providing six renewals as required by law. By limiting Plaintiffs to four renewals, Advance accelerated the time in which full payment became due, thereby creating a higher likelihood of defaults and causing the final payment to be illegally high.

The Complaint also alleges that Advance failed to renew Plaintiffs' loans and reduce the principal of those loans by five percent as required by law. Advance styled what were actually renewals as entirely new loans. When Plaintiffs could not pay the amount due, rather than allow principal reducing renewals, Advance "flipped" the loans as follows:

2

Advance required Plaintiffs to pay the entire amount of principal plus interest at an Advance store, which Advance described as paying off the loan in full; within minutes of the payment, Advance granted a new loan for at least the same amount as the previous loan. To facilitate this flipping scheme, when customers could not bring in the entire amount owed on a loan, Advance would take only the interest payment and falsify documentation to indicate full payment. In making the new loans, Advance often returned the exact same currency that customers had used to pay off the prior loans minutes earlier. Without the promise of a flipped loan, customers could not have afforded to pay off their prior loans. Plaintiffs state that Advance did this for the purpose of avoiding the legislative mandate to reduce principal and avoid long-term loans, and instead ensured that Plaintiffs were trapped in Advance loans for months or years.

Further, the Complaint states that Advance set illegally high interest rates. It did so by charging more than 75% of the original loan amount in interest in fees. Had Advance allowed six renewals while reducing the principal, it would have collected in excess of 75% in fees and interest.

Plaintiffs set forth their claims in seven separate counts. In Count I, Plaintiffs seek a declaratory judgment that the arbitration clauses are unconscionable, against Missouri public policy, and unenforceable "*pursuant to Missouri Revised Statute 527.010 (the "Missouri Declaratory Judgment Act")*." (Compl. at 10 (emphasis added).)

In Count II, Plaintiffs allege that Advance's course of conduct constituted unfair or

3

deceptive trade practices in violation of the Missouri Merchandising Practices Act, codified at Section 407.010 *et seq.*, of the Missouri Revised Statutes ("MPA"). Plaintiffs allege they suffered ascertainable losses in that Advance (1) failed to consider their ability to repay the loans, (2) charged them interest and fees on principal Advance should have never loaned, (3) charged them illegally-high interest rates, and (4) denied them the right to six principal-reducing renewals.

In Count III, Plaintiffs allege that Advance violated Missouri's payday loan statute, specifically Section 408.500.6 of the Missouri Revised Statutes, by limiting Plaintiffs to four loan renewals. Plaintiffs allege that, as a result, they have suffered ascertainable losses.

In Counts IV and VII, citing Sections 408.500.6 and 408.505.3 of the Missouri Revised Statutes, Plaintiffs allege that Advance violated Missouri's payday loan statute by setting illegally-high interest rates. In both counts, Plaintiffs allege that, as a result, they have suffered ascertainable losses.

In Count V, Plaintiffs allege that Advance violated the payday loan statute, specifically Section 408.500.6 of the Missouri Revised Statutes, by frequently renewing Plaintiffs' loans without reducing the principal loan amount and instead, flipped the loans to avoid the requirements of the statute. Plaintiffs allege that, as a result, they have suffered ascertainable losses.

In Count VI, Plaintiffs allege that Advance violated the payday loan statute, specifically Section 408.500.7 of the Missouri Revised Statutes, by failing to consider

4

Plaintiffs' ability to repay the loans. Plaintiffs allege that, as a result, they have suffered ascertainable losses.

Plaintiffs attach to the Complaint two form contracts which they signed in taking their loans from Advance. Both contracts include arbitration clauses prohibiting class actions and class arbitrations.

Advance moves to dismiss Count I for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure and Counts I through VII for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of those rules.

**II.     Discussion**

    **A.     Motion to Dismiss Count I for Lack of Subject Matter Jurisdiction**

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, Advance moves to dismiss Count I for lack of subject matter jurisdiction. On its face, Count I alleges a claim for declaratory judgment pursuant to the Missouri Declaratory Judgment Act. Dismissal for lack of subject matter jurisdiction requires defendants to show that the purported basis of jurisdiction is deficient either on its face or in its factual allegations. *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). In a facial challenge such as this, the Court presumes true all of the factual allegations concerning jurisdiction. *Id.*

Defendants are correct that the Court lacks jurisdiction over Count I because the Missouri Declaratory Judgment Act gives Missouri circuit courts exclusive jurisdiction over Missouri Declaratory Judgment Act claims. *See* Mo. Rev. Stat. § 527.010. In their

Suggestions in Opposition to the Motion to Dismiss, and in their simultaneously-filed Motion for Leave to File Amended Complaint, Plaintiffs admit that the Court lacks jurisdiction over the Missouri Declaratory Judgment Act claim. Plaintiffs state that the reference to the Missouri Declaratory Judgment Act was a mistake, a remnant of a previous draft of the Complaint. Plaintiffs explain that they should have based their claims in Count I on the Federal Declaratory Judgment Act.

Because the Court does not have jurisdiction over Count I as alleged on the face of the Complaint, the Court grants Advance's motion with regard to Count I. However, Advance makes no argument that it has been prejudiced by this mistake. *See generally Dale v. Weller*, 956 F.2d 813, 815 (8th Cir. 1992) (reversing denial of leave to amend complaint where defendants were not prejudiced by the delay). Therefore, the Court gives Plaintiffs leave to amend Count I to change its claim to one based on the Federal Declaratory Judgment Act.

### B. Motion to Dismiss for Failure to State a Claim

Advance moves to dismiss the remaining counts, concerning the MPA and Missouri's payday loan statute, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Supreme Court recently clarified the motion to dismiss standard, explaining that a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations

in the complaint." *Bell Atl. Corp.*, 127 S. Ct. at 1969.

### 1. Count II[1]

Advance argues that the Court should dismiss Count II which alleges violation of the MPA. Advance argues that it is subject to the Missouri Division of Finance and the MPA provides that companies subject to the Missouri Division of Finance cannot be sued under the MPA.[2]

To survive Advance's motion to dismiss, Plaintiffs need to plead the elements of their claims. In order to state a claim under the MPA, Plaintiffs must allege the following: (1) they purchased merchandise (2) for personal, family, or household purposes and (3) suffered an ascertainable loss (4) as a result of deception or unfair practices. Mo. Rev. Stat. § 407.025; *see also Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 773 (Mo. 2007). Advance does not argue that Plaintiffs failed to allege these elements. Instead Advance asserts that Plaintiffs' claim fails because Advance is subject to the direction and supervision of the director of the Missouri Division of Finance.

---

[1] There is a dearth of case law on the issues raised by Advance's motion with regard to the MPA and the payday loan statute. In their briefs, the parties cite to no case law on the substantive issues relating to those statutes.

[2] The MPA provides:
Nothing contained in this section shall apply to: . . . (2) Any institution or company that is under the direction and supervision of the . . . director of the division of finance, *unless* the directors of such divisions specifically authorize the attorney general to implement the powers of this chapter or such powers are provided to . . . a private citizen by statute.
Mo. Rev. Stat. § 407.020.2.

7

Advance's argument is in the nature of an affirmative defense which is not properly addressed with a motion to dismiss. *See generally E.E.O.C. v. Northwest Airlines, Inc.*, No. C85-36W, 1989 WL 168009, at *4 (W.D.Wash. Aug. 7, 1989) (indicating that statutory exceptions to employers' ADEA liability are in nature of affirmative defenses). The burden of pleading and proving this defense is on Advance, and Plaintiffs need not address it in their Complaint. *See Stanko v. Patton*, 228 Fed. Appx. 623, 626 (8th Cir. 2007). Therefore, the Court denies Advance's motion to dismiss with regard to Count II. *See generally Associated Elec. Co-op. v. Sachs Elec. Co.*, No. 86-3336-CV-S-4, 1987 WL 14499, at *4 (W.D. Mo. Jan. 12, 1987) (refusing to dismiss where affirmative defense raised and plaintiff alleged elements of claim).

### 2. **Count III**

Advance argues that the Court should dismiss Count III, concerning Advance's limit on the number of renewals, because (1) Advance was not required to issue six renewals and (2) Plaintiffs fail to allege that they have sustained actual damage. The payday loan statute specifically addresses renewal as follows:

> The lender *shall renew* the loan upon the borrower's written request and the payment of any interest and fees due at the time of such renewal. . . . *However, no loan may be renewed more than six times*.

Mo. Rev. Stat. § 408.500.6 (emphasis added). Essentially, Advance argues that the "shall renew" language means simply "may renew." The Court disagrees: Section 408.500.6 plainly requires lenders to provide up to, but not more than, six renewals. *See generally City*

*of Jefferson City, Mo. v. Cingular Wireless, LLC*, — F.3d —, Nos. 97-2884, 07-2885, 2008 WL 2609154 (8th Cir. July 3, 2008) (citation omitted) (stating that the primary rule of statutory interpretation is to give effect to the plain language of the statute).

Advance asserts that, even if it violated Section 408.500.6, Plaintiffs have failed to allege any resulting damage as required by the payday loan statute. *See* Mo. Rev. Stat. § 408.562 (allowing civil actions by parties suffering "loss of money or property" arising from violations of payday loan statute). While Count III itself makes only the general allegation that Plaintiffs "are aggrieved and suffered ascertainable losses," Plaintiffs do allege elsewhere in the Complaint that limiting renewals caused illegally-high final payments and excessive interest charges. The nature of Plaintiffs' MPA and payday loan allegations, read as a whole, are sufficient to put Advance on notice of Plaintiffs' claim for losses resulting from Advance's actions. *See StreamCast Networks, Inc. v. IBIS LLC*, No. CV 05-04239, 2006 WL 5720345, at *5 (C.D. Cal. May 2, 2006) (finding damages allegations adequate where complaint alleged generally "[a]s a direct and proximate cause of [contractual] breach, [Plaintiff] is entitled to recover all of its damages that it has suffered"); *Wendler & Ezra, P.C. v. AIG, Inc.*, No. 04-CV-641, 2005 WL 1847085, at *3 (S.D. Ill. Aug. 3, 2005) (finding general statement of damages sufficient in interference with economic advantage claim).

There remain questions of fact concerning whether Advance violated the payday loan statute by limiting the number of renewals and the Complaint adequately pleads loss. Therefore, the Court denies Advance's motion with regard to Count III.

9

### 3. Counts IV and VII

Advance argues that the Court should dismiss Counts IV and VII, concerning excessive interest, because the payday loan statute does not limit interest as described by Plaintiffs.[3] In Count IV, Plaintiffs allege that Advance violated the payday loan statute by setting an interest rate that would have exceeded the statutory maximum if Advance had allowed the requisite six renewals. In Count VII, Plaintiffs simply allege that Advance charged in excess of 75% of their original loan amounts.

In response to both counts, Advance asserts that the payday loan statute allows it to charge any interest rate to which the parties agree, so long as the total cost of interest and fees does not exceed 75% of the original loan amount. *See generally* Mo. Rev. Stat. §§ 408.500.2 (allowing simple interest and fees), 408.100 (allowing interest rates agreed to by the parties), 408.505.3 (providing that no borrower shall be required to pay total amount of interest and fees in excess of 75% of the original loan amount). Even if Advance's proposition is correct, Advance itself acknowledges, "Violations of Section 408.505.3 are necessarily fact-dependent." (Sugg. Supp. Mot. Dismiss at 7.) Furthermore, the Court rejects Advance's argument that (1) Plaintiffs' interest rate allegations are merely hypothetical, and (2) therefore, it is impossible to determine whether the interest rates were

---

[3] Advance also argues that Count IV should be dismissed for failing to adequately plead damage. Like Count III, Count IV includes a general allegation of ascertainable loss. For the reasons set forth in the above discussion of Count III, the Court rejects Advance's argument concerning damage pleading in Count IV.

10

proper. A motion to dismiss is not the proper vehicle to test the factual accuracy of Plaintiffs' complaint. Whether Plaintiffs can prove their claims is appropriately addressed in a motion for summary judgment. The Court finds the allegations of Count IV, particularly when read in light of the entire Complaint, sufficient to meet the pleading standards of Rule 12(b)(6).

However, as Advance suggests, it is unclear from the Complaint how Count VII differs substantively from Count IV. Both allege excessive interest rates and generally aver loss. As such, Count VII appears to be duplicative. If not a duplication, its bare allegations do not sufficiently put Advance on notice of any separate claim against it. As such, the Court grants Advance's motion with regard to Count VII. *See generally Ott v. Target Corp.*, 153 F. Supp. 2d 1055, 1062 (D. Minn. 2001) (dismissing count for failing to set forth independent basis of claim).

### 4. Count V

Advance argues that the Court should dismiss Count V, concerning failure to reduce loan principal when issuing renewals. Advance asserts that the alleged flipped loans should be considered new loans, rather than renewals and, thus, Advance had no duty to reduce the principal.

Several statutory provisions shed light on the parties' arguments. Section 408.500.6 of the payday loan statute states, "[U]pon the first renewal of the loan agreement, and each subsequent renewal thereafter, the borrower shall reduce the principal amount of the loan by not less than five percent of the original amount of the loan until such loan is paid in full."

Mo. Rev. Stat. § 408.500.6. Section 408.505.4 clarifies:

> A loan . . . shall be deemed completed and shall not be considered a renewed loan when . . . the payee redeems the instrument by paying the full amount of the instrument to the lender. Once the payee has completed the loan, the payee may enter into a new loan with a lender.

Mo. Rev. Stat. § 408.505.4. Noting the Missouri legislature's intent that borrowers should not remain in payday loans for a great period of time, the Missouri Code of State Regulations explains:

> [W]hether a renewal or something else which does not count as a renewal has occurred, the Division of Finance will insist upon absolute good faith from its licensees and will look to substance rather than form. Generally, if the customer enters the office indebted and leaves the office indebted, a renewal will be assumed to have taken place unless the loan was paid in full in cash . . . .

Mo. Code Regs. Ann. tit. 20, § 1140-11.030(8).

In the instant case, Plaintiffs allege that, although new loans in form, the loans were actual renewals in substance. The statutes and regulations concerning renewals indicate that the characterization of the allegedly flipped loans depends on the specific facts surrounding their creation (*e.g.*, whether Plaintiffs paid the full amounts of their original loans in cash before receiving subsequent loans). Accordingly, the Court denies Advance's motion with regard to Count V.

### 5. Count VI

Advance argues that the Court should dismiss Count VI, concerning failure to consider ability to pay. Count VI generally alleges that Advance violated Section 408.500.7

of the payday loan statute by failing to consider Plaintiffs' ability to repay their loans – and, more specifically, that Advance did so by failing to obtain documents concerning that ability.

Advance argues that Count VI fails to state a claim for relief because (1) Plaintiffs list only legal conclusions and (2) certain provisions of the contracts attached to the Complaint show that Advance "reasonably" considered ability to pay. Thus, while implying that it does not understand Plaintiffs' claim, Advance argues facts to contradict that claim. A question of fact is not properly addressed on a motion to dismiss. The Court denies Advance's motion with regard to Count VI.

### III.    Conclusions

Accordingly, it is hereby

ORDERED that Advance's Motion to Dismiss [Doc. 10] is granted with respect to Counts I and VII and denied in all other respects.

It is further

ORDERED that Plaintiffs' Motion for Leave to Amend [Doc. 14] is granted. Plaintiff is instructed to file its requested amended Complaint on ECF within 7 days.

s/ Nanette K. Laughrey<br>
NANETTE K. LAUGHREY<br>
United States District Judge

Dated:  July 15, 2008
Jefferson City, Missouri